**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **DSS Technology** | § | |
| **Management, Inc.** | § | |
| | § | |
| **Plaintiff,** | § | **Civil Action No. 6:15-cv-130** |
| **v.** | § | |
| | § | **Jury Trial Demanded** |
| **Intel Corporation;** | § | |
| **Dell, Inc.; GameStop Corp.;** | § | |
| **Conn's, Inc.; Conn Appliances, Inc.;** | § | |
| **NEC Corporation of America;** | § | |
| **Wal-Mart Stores, Inc.;** | § | |
| **Wal-Mart Stores Texas, LLC;** | § | |
| **AT&T Inc.** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff DSS Technology Management, Inc., files this Original Complaint for patent infringement under 35 U.S.C. § 271 and alleges as follows:

I.     **THE PARTIES**

1.     Plaintiff DSS Technology Management, Inc. (Plaintiff or "DSS") is a corporation certified and authorized to transact business in Texas.  It maintains offices in Plano, Texas where its employees are engaged in marketing and engineering efforts directed toward monetizing the intellectual property discussed herein.

2.     Defendant Intel Corporation ("Intel") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 2200 Mission College Blvd., RNB-5-125, Santa Clara, CA 95054.  Intel may be served through its registered agent C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

3.     Defendant Dell, Inc., ("Dell") is a corporation formed under the laws of the State of Delaware with its principal place of business at One Dell Way, Round Rock, Texas 78682. Dell's registered agent in Texas appears to be Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.     Defendant GameStop Corp. ("GameStop") is a corporation formed under the laws of the State of Delaware with its principal place of business at 625 Westport Parkway, Grapevine, Texas 76051.  GameStop's registered agent in Texas appears to be CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

5.     Defendant Conn's, Inc. is a corporation formed under the laws of the State of Delaware with its principal place of business at 3295 College Street, Beaumont, Texas 77701. Conn's, Inc. registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.     Conn Appliances, Inc. (with Conn's, Inc., "Conn's") is a corporation formed under the laws of the State of Texas with its principal place of business in at 3295 College Street, Beaumont, Texas 77701.  This Defendant may be served with process through its registered agent, CT Corporation System at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

7.     Defendant NEC Corporation of America ("NEC") is a corporation formed under the laws of the state of Nevada with a principal place of business at 6535 North State Highway 161, Irving, Texas 75039.  NEC may be served through its registered agent National Registered Agents, Inc., located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

8.     Defendant Wal-Mart Stores, Inc. is a corporation formed under the laws of the State of Delaware with its principal place of business at 702 SW 8th Street, Bentonville,

Arkansas 72716.  Wal-Mart Stores, Inc.'s registered agent for receipt of service of process is CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

9.      Defendant Wal-Mart Stores Texas, LLC (with Wal-Mart Stores, Inc., "Wal-Mart") is a limited liability company that is organized and that exists pursuant to the laws of the State of Delaware with its principal place of business at 702 S W 8th Street, Bentonville, Arkansas 72716.  Wal-Mart Stores Texas, LLC's registered agent for receipt of service of process is CT Corporation System at 350 N St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

10.     Defendant AT&T Inc. ("AT&T") is a corporation formed under the laws of the State of Delaware with its principal place of business at 208 South Akard Street, Dallas, Texas 75202.  AT&T may be served with process through its agent, CT Corporation System at 350 N St. Paul St., Suite 2900, Dallas, Texas 75201-4234.

II.     **JURISDICTION AND VENUE**

11.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.     Venue is proper in the Tyler Division of the Eastern District of Texas pursuant to 28 U.S.C. §1391(b), (c), and (d) and 28 U.S.C. § 1400(b) for the reasons set forth above and below.  Plaintiff contends that the design, manufacture, marketing, sale, offer of sale, and/or use of the infringing products has occurred throughout the Eastern District of Texas.  Thus, a substantial part of the events causing infringement and giving rise to this cause of action have occurred in this district. Venue is proper under 28 U.S.C. §§ 1391(b), (c), and (d) and 1400(b) because at least Defendants Intel, GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart reside in this District and all Defendants have committed acts of infringement including but not limited to

designing, manufacturing, using, selling, and/or offering for sale the infringing products throughout this District, as described below and throughout this Complaint.  Furthermore, venue is proper because Defendants conduct business within this District and/or solicit and establish relationships with entities within this District, which include the making, using importation, sell, and/or offering for sale of Infringing Products as discussed below. Moreover, GameStop, Dell, Conn's, AT&T, and Wal-Mart each maintains offices, headquarters, or retail locations within this District where Infringing Products are designed, manufactured, used, and/or sold.  Each act of Defendants' directly or indirectly infringing conduct in this District gives rise to proper venue.

13.    This Court has personal jurisdiction over Intel.  Personal jurisdiction exists generally over Intel because Intel has sufficient minimum contacts within the forum as a result of business conducted within the State of Texas and within this District. Intel has conducted and does conduct business within the State of Texas.  At its facilities in Austin, Intel employs approximately 1,000 Texans and does extensive microprocessor research and development within the State of Texas.  Plaintiff contends that some or all of these employees and this research and development relate to the patents-in-suit and the accused products described below. Intel, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises products containing semiconductors that infringe the patent claims involved in this action.  Such conduct occurs in the United States, the State of Texas, and the Eastern District of Texas.  Intel has purposefully and voluntarily placed one or more of its products into the stream of commerce with the expectation that it will be purchased by consumers in the United States, the State of Texas, and the Eastern District of Texas.  The Infringing Products have been and continue to be imported into and purchased by consumers in

the Eastern District of Texas.  Intel has committed the tort of patent infringement within the United States, the State of Texas and, more particularly, within the Eastern District of Texas.

14.     This Court has personal jurisdiction over Defendants GameStop, Dell, NEC, Conn's, and AT&T, and Wal-Mart.  Personal jurisdiction exists generally over GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart because they have sufficient minimum contacts within the forum as a result of business conducted within the State of Texas and within this District. Defendants GameStop, Dell, NEC, Conn's, and AT&T are citizens of the State of Texas. Defendants GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart employ Texans and maintain facilities in Texas.  Moreover, Defendants GameStop, Dell, Conn's, AT&T, and Wal-Mart employ Texans and maintain facilities in the Eastern District of Texas.  Further, within this District, each of GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart directly, or through intermediaries (including distributers, retailers, and others), ships, distributes, offers for sale, sells, and/or advertises products containing semiconductors that infringe the patent claims involved in this action.  Each of GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart has purposefully and voluntarily placed one or more of its products into the stream of commerce with the expectation that it will be purchased by consumers in the United States, the State of Texas, and the Eastern District of Texas.  Such conduct has included, without limitation, advertising and selling Infringing Products directly to consumers in the Eastern District of Texas. The Infringing Products have been and continue to be imported into and purchased by consumers in the Eastern District of Texas.  Each of GameStop, Dell, NEC, Conn's, AT&T, and Wal-Mart has committed the tort of patent infringement within the United States, the State of Texas and, more particularly, within the Eastern District of Texas.

15.     All Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this district, the State of Texas, and elsewhere in the United States.

16.     Upon information and belief, Dell has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, Dell and Intel have partnered to create a series of workstation and desktop solutions, which include Infringing Products, to sell to their customers.  Upon information and belief, Dell works in close partnership with Intel to deliver product-ready systems for distributed and compute-intensive environments.  Upon information and belief, Intel has specifically optimized the Infringing Products for Dell's products and services.  Upon information and belief, Dell engineers, marketing, and/or other personnel coordinated with Intel employees to improve and sell the Infringing Products based on customer needs.

17.     Upon information and belief, AT&T has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, AT&T and Intel have joint research and development programs that seek to improve the functionality of the Infringing Products.  Plaintiff contends that some or all of the conduct related to this joint venture has occurred in Texas and in the Eastern District of Texas.

18.     Based on the foregoing conduct and actions, venue is proper, and the Court has personal jurisdiction over all Defendants Intel, GameStop, Dell, NEC, AT&T, Conn's, and Wal-Mart.

19.     DSS maintains offices in the Eastern District of Texas, where employees are engaged in marketing and engineering efforts directed toward developing products based on the intellectual property, including but not limited, that at issue in this case.

III.    **GENERAL ALLEGATIONS**

20.    On October 12, 1999, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 5,965,924 ("the '924 Patent"), titled "Metal Plug Local Interconnect," to Ting P. Yen.  A true and correct copy of the '924 Patent is attached hereto as Exhibit A.

21.    On August 31, 2004, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,784,552 ("the '552 Patent"), titled "Structure Having Reduced Lateral Plug Erosion," to James E. Nulty and Christopher J. Petti.  A true and correct copy of the '552 Patent is attached hereto as Exhibit B.

22.    Plaintiff is the owner by assignment of the '924 Patent and the '552 Patent and owns all rights, title, and interest in and to the '924 Patent and the '552 Patent, including all rights to sue and recover for past and future infringement.

IV.    **DEFENDANTS' INFRINGEMENT OF THE '924 PATENT**

23.    Defendants have infringed and continue to infringe, directly, and/or through the inducement of others, the claimed methods of the '924 Patent by making, using, importing, exporting, selling, and/or offering for sale the Infringing Products.

24.    Plaintiff has been damaged as a result of Defendants' infringing conduct. Defendants are, therefore, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

25.    Defendants, directly or through intermediaries, are liable for infringing one or more claims of the '924 Patent.

26.     Defendants have failed to obtain permission from DSS to make, use, offer to sell, sell, or import products embodying the claims in the '924 Patent.

**A.      Intel's Infringement of the '924 Patent**

27.     Intel has been and is now directly infringing the '924 Patent by making, using, selling, offering for sale, importing into the United States, and/or exporting the Infringing Products, or consumer products that contain Infringing Products, that either structurally embody one or more claims of the '924 Patent or are manufactured using the processes embodied in one or more claims of the '924 Patent.  Intel also has been and now is inducing others, such as manufacturers and/or retailers of products incorporating Intel's infringing semiconductors, to directly infringe one or more claims of the '924 Patent by using, selling, offering for sale, or importing products made by processes embodied in, or that otherwise embody, one or more claims of the '924 Patent.

28.     Intel directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by making, using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Intel has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, products such as the Intel Core i3, i5, i7, Pentium, Celeron, and Xeon microprocessors, all made via a 22 nanometer FinFET process (the "Infringing Products"). Intel's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Intel also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to

consumers, businesses, distributors, and resellers.  Intel's infringement of the '924 Patent has caused substantial damage to DSS.  Intel's infringing activities violate at least 35 U.S.C. § 271(a).

29.     Intel directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent. Intel's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers, businesses, distributors, resellers, sales representatives, to use, promote, market, distribute, and/or sell the Infringing Products.  Plaintiff contends that Intel aided, instructed, or otherwise acted with the intent to cause acts by consumers, businesses, distributors, resellers, and sales representatives that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, Intel knew of the '924 Patent, and Intel knows, or at least should know, that Intel's actions would result in infringement of the '924 Patent.  By way of example only, Intel has induced infringement and continues to induce infringement of, in addition to other claims of, at least claim 1 of the '924 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, products such as the Intel Core i3, i5, i7, Pentium, Celeron, and Xeon microprocessors, all made via a 22 nanometer FinFET process.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.  Intel's infringing activities violate 35 U.S.C. § 271(b).

30.     Intel, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Intel will continue to infringe the '924 Patent.

### B.    GameStop's Infringement of the '924 Patent

31.    GameStop directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, GameStop has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, and i7 microprocessors, which are featured in, for example, the Alienware Alpha and X series of computers.  GameStop's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  GameStop also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  GameStop's infringement of the '924 Patent has caused substantial damage to DSS.  GameStop's infringing activities violate at least 35 U.S.C. § 271(a).

32.    GameStop directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent.  GameStop's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, GameStop aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, GameStop knew of the '924 Patent, and GameStop knows, or at least should know, that GameStop's actions would result in infringement of the '924

Patent.  By way of example only, GameStop has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, and i7 microprocessors, which are featured in, for example, the Alienware Alpha and X series of computers.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.  GameStop's infringing activities violate 35 U.S.C. § 271(b).

33.    GameStop, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, GameStop will continue to infringe the '924 Patent.

## C.    Dell's Infringement of the '924 Patent

34.    Dell directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Dell has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell's Inspiron Desktop 3000 Series and PowerEdge rack servers.  Dell's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Dell also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives,

distributors, and resellers to consumers, businesses, distributors, and resellers.   Dell's infringement of the '924 Patent has caused substantial damage to DSS.   Dell's infringing activities violate at least 35 U.S.C. § 271(a).

35.    Dell directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent. Dell's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, Dell aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.   At least as to the time of this filing, Dell knew of the '924 Patent, and Dell knows, or at least should know, that Dell's actions would result in infringement of the '924 Patent.   By way of example only, Dell has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Inspiron Desktop 3000 Series and PowerEdge rack servers.   These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.   Dell's infringing activities violate 35 U.S.C. § 271(b).

36.    Dell, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.   Unless enjoined by this Court, Dell will continue to infringe the '924 Patent.

37.     Upon information and belief, Dell has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, Dell and Intel have partnered to create a series of workstation and desktop solutions featuring Intel Core and Xeon processors to sell to their customers.  Upon information and belief, Dell works in close partnership with Intel to deliver product-ready systems for distributed and compute-intensive environments.  Upon information and belief, Intel has specifically optimized the Infringing Products for Dell's products and services.  Upon information and belief, Dell engineers, marketing, and/or other personnel coordinated with Intel employees to improve and sell the Infringing Products based on customer needs.

### D.     Wal-Mart's Infringement of the '924 Patent

38.     Wal-Mart directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Wal-Mart has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell Inspiron 3847 Desktop PCs. Wal-Mart's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Wal-Mart also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Wal-Mart's infringement of the '924 Patent

has caused substantial damage to DSS.   Wal-Mart's infringing activities violate at least 35 U.S.C. § 271(a).

39.     Wal-Mart directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent.  Wal-Mart's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, Wal-Mart aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, Wal-Mart knew of the '924 Patent, and Wal-Mart knows, or at least should know, that Wal-Mart's actions would result in infringement of the '924 Patent.  By way of example only, Wal-Mart has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell Inspiron 3847 Desktop PCs.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.   Wal-Mart's infringing activities violate 35 U.S.C. § 271(b).

40.     Wal-Mart, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Wal-Mart will continue to infringe the '924 Patent.

E.      **Conn's Infringement of the '924 Patent**

41.    Conn's directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Conn's has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, and Pentium microprocessors, which are featured in, for example, the HP Pavilion 15-n263nr Notebook PC. Conn's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Conn's also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Conn's infringement of the '924 Patent has caused substantial damage to DSS.  Conn's infringing activities violate at least 35 U.S.C. § 271(a).

42.    Conn's directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent.  Conn's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, Conn's aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, Conn's knew of the '924 Patent, and Conn's knows, or at least should know, that Conn's actions would result in infringement of the '924 Patent.  By

way of example only, Conn's has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, and Pentium microprocessors, which are featured in, for example, the HP Pavilion 15-n263nr Notebook PC.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.  Conn's infringing activities violate 35 U.S.C. § 271(b).

43.   Conn's, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Conn's will continue to infringe the '924 Patent.

**F.    NEC's Infringement of the '924 Patent**

44.   NEC directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, NEC has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the NEC Express5800/T110g-S.   NEC's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  NEC also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.

NEC's infringement of the '924 Patent has caused substantial damage to DSS.  NEC's infringing activities violate at least 35 U.S.C. § 271(a).

45.     NEC directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent. NEC's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, NEC aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, NEC knew of the '924 Patent, and NEC knows, or at least should know, that NEC's actions would result in infringement of the '924 Patent.  By way of example only, NEC has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the NEC Express5800/T110g-S.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.  NEC's infringing activities violate 35 U.S.C. § 271(b).

46.     NEC, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, NEC will continue to infringe the '924 Patent.

### G.     AT&T's Infringement of the '924 Patent

47.     AT&T directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '924 Patent by

using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, AT&T has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the CloudArchitect dedicated server service.  AT&T's infringing activities include importing, offering for sale, and selling the Infringing Products in the United States.  AT&T also infringes the '924 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  AT&T's infringement of the '924 Patent has caused substantial damage to DSS.  AT&T's infringing activities violate at least 35 U.S.C. § 271(a).

48.     AT&T directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '924 Patent.  AT&T's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  AT&T aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, AT&T knew of the '924 Patent, and AT&T knows, or at least should know, that AT&T actions would result in infringement of the '924 Patent.  By way of example only, AT&T has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the CloudArchitect dedicated server service.  These actions,

individually and collectively, have induced and continue to induce the direct infringement of the '924 Patent by consumers, businesses, distributors, resellers, and sales representatives.  AT&T's infringing activities violate 35 U.S.C. § 271(b).

49.     Upon information and belief, AT&T has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, AT&T and Intel have joint research and development programs that seek to improve the functionality of the Infringing Products, including the Xeon processor.

50.     AT&T, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, AT&T will continue to infringe the '924 Patent.

## V.     DEFENDANT'S INFRINGEMENT OF THE '552 PATENT

51.     Defendants have infringed and continue to infringe, directly, and/or through the inducement of others, the claimed apparatus of the '552 Patent by making, using, importing, exporting, selling, and/or offering for sale the Infringing Products.

52.     Plaintiff has been damaged as a result of Defendants' infringing conduct. Defendants are, therefore, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.     Defendants, directly or through intermediaries, are liable for infringing one or more claims of the '552 Patent.

54.     Defendants have failed to obtain permission from DSS to make, use, offer to sell, sell, or import products embodying the claims in the '552 Patent.

A.      **Intel's Infringement of the '552 Patent**

55.     Intel has been and is now directly infringing the '552 Patent by making, using, selling, offering for sale, importing into the United States, and/or exporting the Infringing Products, or consumer products that contain Infringing Products, that either structurally embody one or more claims of the '552 Patent or are manufactured using the processes embodied in one or more claims of the '552 Patent.  Intel also has been and now is inducing others, such as manufacturers and/or retailers of products incorporating Intel's infringing semiconductors, to directly infringe one or more claims of the '552 Patent by using, selling, offering for sale, and/or importing products made by processes embodied in, or that otherwise embody, one or more claims of the '552 Patent.

56.     Intel directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by making, using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Intel has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, products such as the Intel Core i3, i5, i7, Pentium, Celeron, and Xeon microprocessors, all made via a 22 nanometer FinFET process (the "Infringing Products"). Intel's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Intel also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Intel's infringement of the '552 Patent has

caused substantial damage to DSS.  Intel's infringing activities violate at least 35 U.S.C. § 271(a).

57.     Intel directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent. Intel's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers, businesses, distributors, resellers, sales representatives, to use, promote, market, distribute, and/or sell the Infringing Products.  Plaintiff contends that Intel aided, instructed, or otherwise acted with the intent to cause acts by consumers, businesses, distributors, resellers, and sales representatives that would result in direct infringement of the '552 Patent.  At least as to the time of this filing, Intel knew of the '552 Patent, and Intel knows, or at least should know, that Intel's actions would result in infringement of the '552 Patent.  By way of example only, Intel has induced infringement and continues to induce infringement of, in addition to other claims of, at least claim 1 of the '552 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, products such as the Intel Core i3, i5, i7, Pentium, Celeron, and Xeon microprocessors, all made via a 22 nanometer FinFET process.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.  Intel's infringing activities violate 35 U.S.C. § 271(b).

58.     Intel, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Intel will continue to infringe the '552 Patent.

B.     **GameStop's Infringement of the '552 Patent**

59.     GameStop directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, GameStop has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, and i7 microprocessors, which are featured in, for example, the Alienware Alpha and X series of computers.  GameStop's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  GameStop also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  GameStop's infringement of the '552 Patent has caused substantial damage to DSS.  GameStop's infringing activities violate at least 35 U.S.C. § 271(a).

60.     GameStop directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent.  GameStop's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, GameStop aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '924 Patent.  At least as to the time of this filing, GameStop knew of the '552 Patent, and GameStop knows, or at least should know, that GameStop's actions would result in infringement of the '552

Patent.  By way of example only, GameStop has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '552 Patent by making, using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, and i7 microprocessors, which are featured in, for example, the Alienware Alpha and X series of computers.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.  GameStop's infringing activities violate 35 U.S.C. § 271(b).

61.    GameStop, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, GameStop will continue to infringe the '552 Patent.

C.    **Dell's Infringement of the '552 Patent**

62.    Dell directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Dell has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell's Inspiron Desktop 3000 Series and PowerEdge rack servers.  Dell's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Dell also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives,

distributors, and resellers to consumers, businesses, distributors, and resellers.   Dell's infringement of the '552 Patent has caused substantial damage to DSS.   Dell's infringing activities violate at least 35 U.S.C. § 271(a).

63.   Dell directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent. Dell's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.   On information and belief, Dell aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '552 Patent.   At least as to the time of this filing, Dell knew of the '552 Patent, and Dell knows, or at least should know, that Dell's actions would result in infringement of the '552 Patent.   By way of example only, Dell has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '924 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Inspiron Desktop 3000 Series and PowerEdge rack servers.   These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.   Dell's infringing activities violate 35 U.S.C. § 271(b).

64.   Dell, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.   Unless enjoined by this Court, Dell will continue to infringe the '552 Patent.

65.     Upon information and belief, Dell has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, Dell and Intel have partnered to create a series of workstation and desktop solutions featuring Intel Core and Xeon processors to sell to their customers.  Upon information and belief, Dell works in close partnership with Intel to deliver product-ready systems for distributed and compute-intensive environments.  Upon information and belief, Intel has specifically optimized the Infringing Products for Dell's products and services.  Upon information and belief, Dell engineers, marketing, and/or other personnel coordinated with Intel employees to improve and sell the Infringing Products based on customer needs.

**D.     Wal-Mart's Infringement of the '552 Patent**

66.     Wal-Mart directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Wal-Mart has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell Inspiron 3847 Desktop PCs. Wal-Mart's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Wal-Mart also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Wal-Mart's infringement of the '924 Patent

has caused substantial damage to DSS.  Wal-Mart's infringing activities violate at least 35 U.S.C. § 271(a).

67.    Wal-Mart directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent.  Wal-Mart's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, Wal-Mart aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '552 Patent.  At least as to the time of this filing, Wal-Mart knew of the '552 Patent, and Wal-Mart knows, or at least should know, that Wal-Mart's actions would result in infringement of the '552 Patent.  By way of example only, Wal-Mart has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, Pentium, and Xeon microprocessors, which are featured in, for example, the Dell Inspiron 3847 Desktop PCs.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.  Wal-Mart's infringing activities violate 35 U.S.C. § 271(b).

68.    Wal-Mart, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Wal-Mart will continue to infringe the '552 Patent.

**E.    Conn's Infringement of the '552 Patent**

69.    Conn's directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, Conn's has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, and Pentium microprocessors, which are featured in, for example, the HP Pavilion 15-n263nr Notebook PC. Conn's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  Conn's also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  Conn's infringement of the '552 Patent has caused substantial damage to DSS.  Conn's infringing activities violate at least 35 U.S.C. § 271(a).

70.    Conn's directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent.  Conn's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  On information and belief, Conn's aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '552 Patent.  At least as to the time of this filing, Conn's knew of the '552 Patent, and Conn's knows, or at least should know, that Conn's actions would result in infringement of the '552 Patent.  By

way of example only, Conn's has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Core i3, i5, i7, Celeron, and Pentium microprocessors, which are featured in, for example, the HP Pavilion 15-n263nr Notebook PC.  These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.  Conn's infringing activities violate 35 U.S.C. § 271(b).

71.    Conn's, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, Conn's will continue to infringe the '552 Patent.

**F.    NEC's Infringement of the '552 Patent**

72.    NEC directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, NEC has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the NEC Express5800/T110g-S.   NEC's infringing activities include importing, offering for sale, and/or selling the Infringing Products in the United States.  NEC also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.

NEC's infringement of the '552 Patent has caused substantial damage to DSS. NEC's infringing activities violate at least 35 U.S.C. § 271(a).

73. NEC directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent. NEC's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products. On information and belief, NEC aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '552 Patent. At least as to the time of this filing, NEC knew of the '552 Patent, and NEC knows, or at least should know, that NEC's actions would result in infringement of the '552 Patent. By way of example only, NEC has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the NEC Express5800/T110g-S. These actions, individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives. NEC's infringing activities violate 35 U.S.C. § 271(b).

74. NEC, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law. Unless enjoined by this Court, NEC will continue to infringe the '552 Patent.

### G. AT&T's Infringement of the '552 Patent

75. AT&T directly or through intermediaries has infringed and continues to infringe (literally and/or under the doctrine of equivalents) one or more claims of the '552 Patent by

using, making available for another's use, offering to license or licensing in the United States, selling or offering to sell, and/or importing the Infringing Products.  By way of example only, AT&T has directly infringed and continues to infringe, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the CloudArchitect dedicated server service.  AT&T's infringing activities include importing, offering for sale, and selling the Infringing Products in the United States.  AT&T also infringes the '552 Patent by selling and offering to sell the Infringing Products directly and via sales representatives, distributors, and resellers to consumers, businesses, distributors, and resellers.  AT&T's infringement of the '552 Patent has caused substantial damage to DSS. AT&T's infringing activities violate at least 35 U.S.C. § 271(a).

76.     AT&T directly or through intermediaries has and continues to induce infringement (literally and/or under the doctrine of equivalents) of one or more claims of the '552 Patent.  AT&T's deliberate actions include, but are not limited to, actively marketing to, encouraging use by, and instructing consumers to use, promote, market, distribute, and/or sell the Infringing Products.  AT&T aided, instructed, or otherwise acted with the intent to cause acts by consumers that would result in direct infringement of the '552 Patent.  At least as to the time of this filing, AT&T knew of the '552 Patent, and AT&T knows, or at least should know, that AT&T actions would result in infringement of the '552 Patent.  By way of example only, AT&T has induced infringement and continues to induce infringement of, in addition to other claims, at least claim 1 of the '552 Patent by using, selling, and/or offering to sell in the United States, without DSS's authority, Infringing Products, such as the Intel Xeon microprocessors, which are featured in, for example, the CloudArchitect dedicated server service.   These actions,

individually and collectively, have induced and continue to induce the direct infringement of the '552 Patent by consumers, businesses, distributors, resellers, and sales representatives.  AT&T's infringing activities violate 35 U.S.C. § 271(b).

77.     Upon information and belief, AT&T has partnered with Intel to design, sell, and/or market the Infringing Products.  Upon information and belief, AT&T and Intel have joint research and development programs that seek to improve the functionality of the Infringing Products, including the Xeon processor.

78.     AT&T, unless restrained and enjoined, will continue to cause, irreparable injury and damages to Plaintiff for which there is no adequate remedy at law.  Unless enjoined by this Court, AT&T will continue to infringe the '552 Patent.

## VI.   DEMAND FOR A JURY TRIAL

79.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable of right by a jury.

## VII.   PRAYER FOR RELIEF

80.     WHEREFORE, Plaintiff requests the following relief:

81.     A judgment that Defendants have directly infringed the patent-in-suit and/or induced the infringement of the patent-in-suit;

82.     A preliminary and permanent injunction preventing Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, and/or inducing the infringement of the patent-in-suit;

83.     A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Plaintiff its attorneys' fees incurred in prosecuting this action;

84.    A judgment and order requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and enhanced damages for willful infringement as provided by 35 U.S.C. § 284;

85.    A judgment and order requiring Defendants to pay Plaintiff the costs of this action (including all disbursements);

86.    A judgment and order requiring Defendants to pay Plaintiff's pre-judgment and post-judgment interest on the damages award;

87.    A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Plaintiff be awarded a compulsory ongoing licensing fee; and

88.    Such other and further relief as the Court may deem just and proper.

Dated: February 16, 2015

Respectfully submitted,

By:

**Derek Gilliland**
Texas State Bar No. 24007239
**Nix Patterson & Roach, L.L.P.**
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.5389 (facsimile)
dgilliland@nixlawfirm.com
Attorney in Charge

**Edward Chin**
Texas State Bar No.  50511688
**Andrew J.  Wright**
Texas State Bar No.  24063927
**Kirk Voss**
Texas State Bar No.  24075229
**Nix Patterson & Roach, L.L.P.**
5215 N.  O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)
edchin@me.com
andrewjwright@me.com
kirkvoss@me.com

**William E.  "Bo" Davis, III**
Texas State Bar No.  24047416
THE DAVIS FIRM, PC
222 N.  Fredonia St.
Longview, Texas 75601
Telephone: 903-230-9090
Telecopier: 903-230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR PLAINTIFF DSS
TECHNOLOGY MANAGEMENT INC.**