# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| DSS Technology Management, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Intel Corporation, et al., <br><br> Defendants. | Civil Action No. 6:15-cv-130-RWS |

## AGREED MOTION FOR ENTRY OF PROTECTIVE ORDER (WITH DISAGREEMENTS NOTED)

Plaintiff DSS Technology Management, Inc. and Defendants Intel Corporation, Dell, Inc., GameStop Corp., Wal-Mart Stores, Inc., Wal-Mart Stores Texas, LLC, and AT&T Inc.,[1] by and through their undersigned counsel, hereby submit the attached proposed Protective Order with disagreements noted. The parties' disputes are discussed below, and the parties competing provisions are noted in the attached proposed Protective Order.

---

[1] Due to the late filing, Conn's was unable to consent to the final version of the Protective Order. Therefore, Conn's may desire to file a joinder motion.

**Dispute**:

The parties dispute paragraphs 10(k) and 10(l), which relate to the treatment of Intel's Process Recipe Materials—including the filing, service, and transport of Process Recipe Materials—and have submitted competing proposals.

**Intel's Position**:

Intel's Process Recipe Materials—which are the most sensitive, highly protected, and competitively valuable information Intel possesses—shall be served and transported consistent with Intel's own internal/existing protocols for the handling of this information. These protocols require hand delivery of Process Recipe Materials (*e.g.*, not electronically—by email or on electronic storage, even if encrypted—or by mail, FedEx, or similar means) with limited exceptions (such as when only a small excerpt is included in a brief or other filing). The extent of Plaintiff's disputes regarding the handling of Process Recipe Materials became apparent just hours before the deadline for this filing. Intel therefore reserves its right to submit further evidence—including declarations from Intel employees familiar with the extensive protections afforded to the materials at issue—in support of the below positions regarding the treatment of Intel's Process Recipe Materials.

**Intel's Argument**:

The primary remaining dispute between the parties relates to how the parties should be permitted to serve, file, or otherwise transport Process Recipe Material (with limited exceptions) designated "RESTRICTED CONFIDENTIAL – PROCESS RECIPES." Intel asks only that Process Recipe Material be handled for purposes of this case in the same way such information is handled by Intel's own employees in the ordinary course of Intel's business. Indeed, Intel has even offered to cover virtually all of the costs that would be incurred in compliance with these standard protocols. Plaintiff seeks to treat such materials with significantly less protection than is required of Intel's own employees.

Intel's Process Recipe Materials contain the exact information necessary to perform the relevant steps to fabricate the transistors and other components in Intel's cutting-edge microprocessors. Intel's transistor fabrication processes, which are described in the Process Recipe Materials, are the result of tens of billions of dollars in R&D investment. Indeed, the top secret information contained in Intel's Process Recipe Materials has allowed Intel to maintain an 18-month lead (worth many billions of dollars) over its nearest competitors in developing semiconductor process technologies. As a result, they are among the most sensitive, "top secret" information Intel possesses.

Given the importance of protecting the information contained in Intel's Process Recipe Materials, Intel places the strictest restrictions for maintaining these materials even on its own employees. Process recipes are maintained at Intel in only two ways. First, process recipes are stored on the actual manufacturing equipment used to fabricate chips located inside a secure Intel factory (or "fab"). The equipment has a password and may be accessed only by employees who actually implement the recipe on the machine during use. Second, recipes are kept on a drive called a "golden disc," which is accessible only by the specific engineers working to validate or update the recipes. Consistent with this policy, these recipes are not printed or photocopied—even by the very engineers working on them. Moreover, Intel's fabrication facilities—where the recipes are stored—are accessible only by employees who have both a business need and the approval of the area owner. Intel employees receive extensive security training and screening in order to ensure compliance with Intel's comprehensive information security policies and procedures. In fact, Intel employs more than 300 people for the sole purpose of preventing the disclosure (intentional or otherwise) of Intel's sensitive information. Intel is only asking DSS to treat Intel's most sensitive information consistent with how Intel itself treats those materials. When Intel needs to get a process recipe across the country, for instance, it sends those materials

by hand—*i.e.*, with a person, on an airplane—and does **not** send Process Recipe Material via email (even if encrypted), mail, FedEx, or similar means.

The reason Intel devotes so many resources to protect its Process Recipe Material is because of the extreme harm it would suffer should any of this material become public or be obtained by its competitors. If a competitor were to obtain access to Intel's process recipes, it would instantly discover, among other things: (a) the ingredients and amount of ingredients Intel has chosen for optimizing its processes; (b) the process parameters that Intel employs to minimize defects in the metal films, thereby enhancing the performance of the finished microprocessor chip; (c) the process parameters that Intel employs to maximize the performance of the finished microprocessor chip; and (d) how Intel solves the problem of "voiding" (*i.e.*, undesired holes that tend to occur in the film during manufacture). This information is the result of years of work and billions of dollars in R&D investment, and it would be available to a competitor in an instant if Intel's process recipes were even inadvertently disclosed.

Plaintiff's only objection to Intel's proposed handling of its Process Recipe Materials is that Intel's standard hand-delivery protocols would be inconvenient for Plaintiff's counsel. In an effort to address Plaintiff's purported concern, Intel agreed that it would deliver printouts of Process Recipe Materials directly to Plaintiff's outside counsel and designated expert—to ensure that both would have copies—and would arrange to pick up any service copies of Process Recipe Materials from Plaintiff's outside counsel's office, *all at Intel's own expense*. Further, the parties have already agreed to include actual Process Recipe Materials as exhibits to be filed or served only when absolutely necessary. Thus, the *only* circumstances in which Plaintiff will be inconvenienced by having to hand deliver Process Recipe Material are (a) the rare occasion on which Process Recipe Material may be needed as an exhibit for filing with the Court; or (b) when Plaintiff must transport Process Recipe Material among its various offices, all but one of

which are in Texas. Plaintiff's position is unsupported by the law and unreasonable for at least three reasons.

*First*, Plaintiff's counsel highlights on its website that it has a fleet of private jets at its disposal and that "no evidence is beyond [their] reach." (*See* http://www.nixlawfirm.com/Firm-Facilities, last accessed on August 27, 2015 ("Aircraft. In today's world, valuable time can be lost due to the long delays associated with commercial travel. *We maintain a fleet of three aircraft and a staff of full-time pilots prepared to take us anywhere on a moment's notice.* When we discover a key piece of evidence or an important witness, we need to get there immediately. While most attorneys are waiting in line at the airport, we have the ability to get there fast and get there first. *No evidence, no witness, and no venue is beyond our reach*.").) With these resources at its disposal, Plaintiff's position that delivering Intel's most highly-confidential Process Recipe Materials between its lawyers and experts by hand delivery would be an undue hardship is unreasonable on its face.

*Second*, Intel is asking nothing more of Plaintiff than it asks of its own employees. Intel is simply asking that its most sensitive technical documents be treated consistent with Intel's existing internal protocols for the handling of these materials. As demonstrated in countless instances in recent news, encryption is insecure and insufficient alone, particularly with respect to the most sensitive information Intel possesses. *See, e.g.*, R. Sorokanich, Hackers Crack Key-Fob Encryption Used by More Than 25 Automakers (available at http://blog.caranddriver.com/hackers-crack-key-fob-encryption-used-by-more-than-25-automakers/, last accessed on August 28, 2015).

*Third*, any alleged inconvenience to Plaintiff is of Plaintiff's own making. Plaintiff is the party that has requested access to these highly controlled materials, and it has elected to sue Intel in a forum far from where these materials are kept. Under such circumstances, it would be fair for Intel to ask Plaintiff to bear the *full* cost of production and transfer of these materials—yet

Intel is only asking Plaintiff to bear the costs of transferring Process Recipe Materials to the Court or among its own offices. *See* ABA Civil Discovery Standards, Standard 29(b)(iv)(E) (2004) (identifying "[t]he need to protect trade secrets, and proprietary or confidential information" as a factor in cost-shifting); *see also Silicon Graphics, Inc. v. ATI Technologies, Inc.*, No. 06-C-611-C, 2007 WL 5294056, at *1 (W.D. Wis. Sept. 21, 2007) (shifting discovery costs to requesting party in part because of "potential to drag [producing party's] highly confidential information by the heels…").

Any purported inconvenience or cost to Plaintiff is far outweighed by the importance of protecting Intel's top secret Process Recipe Materials. *See STC.UNM v. Intel*, 1:10-cv-01077 (D. N.M. 2010) (Dkt. No. 171) (granting Intel's motion to amend protective order to include heightened restrictions for recipes because plaintiff's "additional burden and cost are significantly outweighed by Defendant's interest in preserving the security of its most valuable documents"); *EPL Holdings, LLC*, C-12-04306 JST (JSC), 2013 WL 2181584, at *7 (granting defendant's request for more stringent restrictions because inconvenience and delay not outweighed by risk posed from inadvertent disclosure); *BIAX Corp. v. Nvidia Corp.*, No. 09-CV-01257-PAB-MEH, 2009 WL 3202367, at *3 (D. Colo. Oct. 5, 2009) (granting defendant's request for heightened restrictions despite inconvenience because "the balance in this situation tips in favor of avoiding unfair business advantage and increased risk of revealing trade secrets").

Intel therefore respectfully requests that the Court enter a protective order that requires the parties to: (1) transport any Process Recipe Materials only by hand delivery (and not electronically—by email or on electronic storage, even if encrypted—or by mail, FedEx, or similar means); (2) serve any Process Recipe Materials only by hand delivery (and not electronically—by email or on electronic storage, even if encrypted—or by mail, FedEx, or similar means); and (3) file any Process Recipe Materials in hard copy manually under seal.

**DSS's Positions and Argument**:

A.      **Plaintiff's Proposal as to Paragraph 10(k)**

Defendants seek to prohibit Plaintiff's outside counsel and Plaintiff's expert(s) from transporting Process Recipe Material via removable electronic media (e.g., a DVD, CD-ROM, or flash memory "stick") via Federal Express or other similarly reliable carrier even if the files on the removable electronic media are encrypted using PGP with a pass phrase whose length is at least ten (10) characters.  Instead, Defendants would require that the only method by which Plaintiff's outside counsel and Plaintiff's expert(s) could transport the Process Recipe Material between and among themselves is by using a courier to carry and hand-deliver the materials in hard copy form on paper, even if the intended recipient is located far away from the sender.  In practice, this would mean that if Plaintiff's outside counsel wanted to transport Process Recipe Material to its technical expert located in, for example, New York, then Plaintiff would have to hire a courier and buy airline tickets to fly the courier from East Texas to New York and back again simply to deliver the documents.  Or Plaintiff would have to pay the expert's hourly fees to fly to Plaintiff's counsel's office just to pick up the Process Recipe Materials.

Plaintiff believes that this process is unnecessary, unduly burdensome, and needlessly increases the litigation expenses in this Action.  Defendants' "must hand carry at all times" procedure is unnecessary because encrypting the files on the removable electronic media using PGP (Pretty Good Privacy) with a pass phrase whose length is at least ten (10) characters will sufficiently maintain the security of the data.  In fact, early in the meet-and-confer process, it was Defendants that initially proposed using "PGP with a pass phrase whose length is at least ten (10) characters" be used for encrypting highly sensitive material sent via email.  Plaintiff agreed to the encryption method proposed by the Defendants, but now Defendants will not agree to use the very encryption method that they initially proposed. Intel's own Security Center web site encourages the use of PGP to "encrypt email with sensitive information." See https://security-

center.intel.com/PGPPublicKey.aspx (accessed Aug. 28, 2015).  Defendants' "must hand carry at all times" procedure is unduly burdensome given that the procedure will require extensive travel and other logistically planning and coordination each time that Plaintiff seeks to transport these materials among themselves and with Plaintiff's expert(s).  Defendants' "must hand carry at all times" procedure will needlessly increase the expenses of litigation given the courier fees and airline ticket and related travel expenses that will be incurred by transporting the Process Recipe Materials.  These excessive courier and travel expenses would be eliminated by allowing the parties to ship the Process Recipe Materials via a reliable courier such as Federal Express and ensuring that the files on the removable electronic media are encrypted using PGP.  Plaintiff requests that the Court adopt Plaintiff's proposal with respect to the transport of Process Recipe Materials.

**B.     Plaintiff's Proposal as to Paragraph 10(l)**

Defendants seek to prohibit Plaintiff from electronically filing under seal any pleadings and other court papers containing Process Recipe Materials using the Court's CM/ECF electronic filing system.  Rather, the Defendants insist that documents "comprising or containing Process Recipe Material shall be filed with the Court manually," which means that in practice Plaintiff would have to physically go to the courthouse and file the documents in hard copy form.  Filing documents under seal electronically is required under Local Civil Rule 5(a)(7) which provides in relevant part, "Documents requested or authorized to be filed under seal or *ex parte* shall be filed in electronic form." (emphasis added). Defendants' proposal not only runs afoul of Local Civil Rule 5(a)(7), but it will also unnecessarily impose additional costs and logistical burdens on the Plaintiff arising from manual non-electronic filing.  Defendants have not provided any evidence that the Court's CM/ECF electronic filing system is inadequate with respect to its file and data security procedures and systems such that manual non-electronic filing is necessary in this Action.  There is every reason to believe that the Court's CM/ECF electronic filing system is

secure and sufficient for this case as it is and has been for other cases involving process recipe and/or source-code level materials. See http://www.ca7.uscourts.gov/CM_ECF/CMECF_FAQs.pdf (accessed Aug. 28, 2015) ("How secure is CM/ECF? CM/ECF has many security features and has passed an evaluation by the National Security Agency.").

Defendants also seek to prohibit Plaintiff from making copies of Process Recipe Materials unless the copies are made within 48 hours of the filing or submission of documents containing or comprising the Process Recipe Materials. This is unduly burdensome as it imposes unnecessary and undue burdens on Plaintiff counsel's preparation of said pleadings and documents.

Plaintiff requests that the Court adopt Plaintiff's proposal with respect to the filing and service of Process Recipe Materials.

Dated: August 28, 2015

Respectfully submitted by:

*/s/ Derek Gilliland, with permission by Michael E. Jones*
**Derek Gilliland**
Texas State Bar No. 24007239
**Attorney in Charge**

**Edward Chin**
Texas State Bar No. 50511688
**Christian J. Hurt**
State Bar no. 24084364
**Kirk Voss**
Texas State Bar No. 24075229
**Robert Winn Cutler**
State Bar No. 24084364
**Ross Leonoudakis**
State Bar No. 24087915
Nix Patterson & Roach, L.L.P.
5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)

edchin@me.com
christianhurt@nixlawfirm.com
kirkvoss@me.com
winncutler@nixlawfirm.com
rossl@nixlawfirm.com

William E. "Bo" Davis, III
Texas State Bar No. 24047416
THE DAVIS FIRM, PC
222 N. Fredonia St.
Longview, Texas 75601
Telephone: 903-230-9090
Telecopier: 903-230-9661
Email: bdavis@bdavisfirm.com

**ATTORNEYS FOR PLAINTIFF DSS TECHNOLOGY MANAGEMENT INC.**


*/s/ Michael E. Jones*
Michael E. Jones
Texas Bar No. 10929400
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Tel.: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@potterminton.com

Michael J. Summersgill (admitted *pro hac vice*)
William F. Lee (admitted *pro hac vice*)
Sarah Beigbeder Petty (admitted *pro hac vice*)
Louis W. Tompros (admitted *pro hac vice*)
**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
60 State Street
Boston, MA  02109
Tel.: (617) 526-6000
Fax : (617) 526-5000
    Email: william.lee@wilmerhale.com
michael.summersgill@wilmerhale.com
        sarah.petty@wilmerhale.com
        louis.tompros@wilmerhale.com

**WILMER CUTLER PICKERING
  HALE AND DORR LLP**
James L. Quarles (admitted *pro hac vice*)

1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6236
Fax: (202) 663-6363
Email: james.quarles@wilmerhale.com

**ATTORNEYS FOR DEFENDANT
INTEL CORPORATION**


*/s/ Gilbert A. Greene, with permission by*
*Michael E. Jones*
Gilbert A. Greene
State Bar No. 24045976
James G. Warriner
State Bar No. 24070813
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Tel: 512.474.5201
Fax: 512.536.4598
bert.greene@nortonrosefulbright.com
jim.warriner@nortonrosefulbright.com

Dan D. Davison
State Bar No. 05590900
Brandy S. Nolan
State Bar No. 24070337
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Tel: 214.855.8000
Fax: 214.855.8200
dan.davison@nortonrosefulbright.com
brandy.nolan@nortonrosefulbright.com

Darren Smith
State Bar No. 24088433
NORTON ROSE FULBRIGHT US LLP
1301 McKinney Ave., Suite 5100
Houston, TX 77010
Tel: 713.651.5151
Fax: 713.651.5246
darren.smith@nortonrosefulbright.com

Deron R. Dacus
THE DACUS FIRM, P.C.

821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel: (903) 705-1117
Fax: (903) 705-1117
ddacus@dacusfirm.com

**ATTORNEYS FOR DEFENDANT DELL INC.**


*/s/ Kent E. Baldauf, Jr., with permission by*
*Michael E. Jones*
Kent E. Baldauf, Jr.
kbaldaufjr@webblaw.com
Christian D. Ehret *(Pro Hac Vice)*
cehret@webblaw.com
THE WEBB LAW FIRM
One Gateway Center
420 Ft. Duquesne Boulevard, Suite 1200
Pittsburgh, PA 15222
T: (412) 471-8815
F: (412) 471-4094

**ATTORNEYS FOR DEFENDANT
GAMESTOP, CORP.**


*/s/ Laura L. Chapman, with permission by*
*Michael E. Jones*
LAURA L. CHAPMAN
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
Telephone: (415) 774-3215
Facsimile: (415) 434-3947
E-mail: lchapman@sheppardmullin.com

*Of Counsel:*
Bridgette Agness
Sheppard, Mullin, Richter & Hampton LLP
333 S. Hope St., 48th Floor
Los Angeles, CA 90071
Telephone: 213.620.1780
Facsimile: 213.620.1398
E-mail: bagness@sheppardmullin.com

Michael E. Jones
Texas Bar No. 10929400
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Tel.: (903) 597-8311
Fax: (903) 593-0846
Email: mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANTS AND COUNTER-CLAIMANTS WAL-MART STORES, LLC AND WAL-MART STORES TEXAS, LLC**

*/s/ Harry L. Gillam, Jr., with permission by Michael E. Jones*
Harry L. Gillam, Jr.
State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

Ronald S. Lemieux
CA Bar No. 120822
Vid Bhakar
CA Bar No. 220210
SINGULARITY LLP
275 Shoreline Drive, Suite 520
Redwood Shores, CA 94065
Telephone: (650) 720-4650
Facsimile: (650) 720-4662
rlemieux@ipsingularity.com
vbhakar@ipsingularity.com

**ATTORNEYS FOR DEFENDANT AT&T INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 28, 2015.

*/s/ Michael E. Jones*